UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| HALEY LENNER, | Case No.: 25-CV-828 TWR (DEB) |
|---|---|
| Plaintiff, | |
| v. | **ORDER (1) VACATING HEARING, (2) DENYING DEFENDANT'S MOTION TO TRANSFER VENUE, AND (3) DENYING PLAINTIFF'S REQUEST FOR SANCTIONS** |
| OUTDOORSY, INC.; and DOES 1 through 20, | |
| Defendants. | (ECF No. 20) |

Presently before the Court is Defendant Outdoorsy, Inc.'s Motion to Transfer Venue ("Mot.," ECF No. 20) pursuant to 28 U.S.C. § 1404(a), as well as Plaintiff Haley Lenner's Response in Opposition to ("Opp'n," ECF No. 23), and Defendant's Reply in Support of ("Reply," ECF No. 26) the Motion. Plaintiff also requests sanctions under Federal Rules of Civil Procedure 16(f)(1)(C) and 16(f)(2) based on Defendant's failure to meet and confer prior to filing the Motion as required by the undersigned's Standing Order for Civil Cases. (*See* Opp'n at 5, 9–11.) Because the Court concludes that the Motion is appropriate for resolution on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1), the Court **VACATES** the hearing scheduled for November 6, 2025. (*See* ECF No. 21.) Having carefully considered the Parties' arguments, the record, and the applicable law, the Court **DENIES** both Defendant's Motion and Plaintiff's request for sanctions.

1

25-CV-828 TWR (DEB)

# BACKGROUND

## I. Plaintiff's Allegations

Plaintiff began working for Defendant on May 10, 2021. (*See* ECF No. 1-2 ("Compl.") ¶ 9.) Although she initially worked remotely from Chicago and Miami, she eventually moved to San Diego. (*See id.*)

Plaintiff contends that, "[d]espite her exemplary work, [she] experienced gender-based discrimination and disparate treatment compared to her male colleagues." (*See id.* ¶ 17.) Much of this was at the hands of Jen Young, Defendant's co-founder and Chief Marketing Officer. (*See id.* ¶¶ 19–20; *see also id.* ¶ 14.) Plaintiff's colleagues noticed Ms. Young's conduct, (*see id.* ¶¶ 20–26, 31–36), and although several employees discussed the issue with Ms. Young, she was unreceptive, and nothing changed. (*See id.* ¶¶ 28–30, 38.)

With her supervisor's knowledge, Plaintiff reported the discrimination to Defendant's Vice President of Talent and primary Human Resources representative, Justin Carter, on October 9, 2024. (*See id.* ¶¶ 39–43.) In response, Mr. Carter removed Plaintiff's one-on-one meetings with Ms. Young from the calendar. (*See id.* ¶ 45.) Plaintiff then faced escalating retaliation—including exclusion from important work issues and facetime and being passed over for certain performance awards—which culminated in her termination. (*See id.* ¶¶ 51–57.)

Plaintiff contends her early departure from an onsite event in Austin, on December 19, 2024, following a co-worker's traumatic seizure, was the pretext for her termination. (*See id.* ¶¶ 58–74.) Specifically, the following day, Plaintiff's supervisor called Plaintiff to tell her that she was terminated and Defendant's CEO, Ms. Young's wife, "[was] pissed, [because] from [the CEO's] perspective [Plaintiff had] disrespected his wife." (*See id.* ¶¶ 75–77.) Because Plaintiff would not resign, she was terminated, effective at the end of December 2024. (*See id.* ¶¶ 78–79.)

## II. Procedural History

On March 4, 2025, Plaintiff filed a Complaint for: 1) FEHA Gender/Sex Discrimination, 2) FEHA Retaliation, 3) Failure to Prevent Discrimination and Retaliation,

and 4) Wrongful Termination in Violation of Public Policy in the Superior Court of the State of California for the County of San Diego. (*See generally* ECF No. 1-2.) Defendant removed the case on April 8, 2025, (*see generally* ECF No. 1), and answered on April 15, 2025. (*See generally* ECF No. 4.)

The Parties attended an Early Neutral Evaluation and Case Management Conference before the Honorable Daniel E. Butcher on July 11, 2025, (*see generally* ECF No. 13), following which Judge Butcher issued a Scheduling Order. (*See generally* ECF No. 14.) Judge Butcher held a Status Conference on August 18, 2025. (*See generally* ECF No. 17), and a follow-up Early Neutral Evaluation Conference and Discovery Conference on September 8, 2025. (*See generally* ECF No. 24.)

In the interim, Defendant first moved to transfer venue on August 19, 2025. (*See generally* ECF No. 18.) The Court rejected Defendant's initial motion for failure to comply with the pre-filing meet-and-confer requirement pursuant to Section III.A.2 of the undersigned's Standing Order for Civil Cases. (*See generally* ECF No. 19.) On August 25, 2025, Defendant filed the instant Motion, (*see generally* ECF No. 20), indicating that, despite "good-faith efforts to meet and confer . . . , the parties were unable to finalize a conference prior to filing." (*See id.* at 2.)

Since the filing of the Motion, the Parties have continued to engage in discovery and have held several discovery conferences before Judge Butcher. (*See generally* ECF Nos. 24 (September 8, 2025 discovery conference), 27 (October 3, 2025 discovery intake call), 28 (October 10, 2025 discovery conference)).

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "[T]he purpose of [Section 1404(a)] is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting

3

*Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26–27 (1960)). "Under § 1404(a), the district court has discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000) (internal quotation marks omitted) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

The moving party bears the burden of demonstrating that transfer is appropriate. *See Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). Specifically, "the moving party must show: (1) that venue is proper in the transferor district; (2) that the transferee district is one where the action might have been brought; and (3) that the transfer will serve the convenience of the parties and witnesses and will promote the interest of justice." *See Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F. Supp. 503, 506 (C.D. Cal. 1992) (citing *Mercury Serv., Inc. v. Allied Bank of Tex.,* 117 F.R.D. 147, 154–55 (C.D. Cal. 1987), *aff'd*, 907 F.2d 154 (9th Cir. 1990), *overruled on other reasons as recognized by Triad Sys. Corp. v. Se. Exp. Co.*, 64 F.3d 1330, 1339 n.21 (9th Cir. 1995)). The last of these requires the court to "consider private and public interest factors affecting the convenience of the forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)).

> For example, the court may consider: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones*, 211 F.3d at 498–99 (citing *Stewart*, 487 U.S. at 29–31; *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987)). "Weighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge." *Savage*, 611 F.2d at 279 (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

# ANALYSIS

Pursuant to Section 1404(a), Defendant seeks transfer of this action to the United States District Court for the Western District of Texas, where it is headquartered. (*See* ECF No. 20-1 ("Mem.") at 5.) There is no genuine dispute that venue is proper in this District or that Plaintiff could have brought this action in the Western District of Texas. (*See* Opp'n at 9.) The primary inquiry, therefore, is whether the relevant factors establish that transfer will serve the convenience of the Parties and witnesses and will promote the interest of justice.

## I.    Preliminary Considerations

Before the Court turns to the public and private interest factors governing the transfer analysis, the Court addresses Plaintiff's contention that Defendant's failure to meet and confer prior to filing the instant Motion warrants summary denial and an award of sanctions in the form of reasonable expenses, including attorneys' fees, pursuant to Rules 16(f)(1)(C) and (f)(2).[1] (*See* Opp'n at 9–11.) Defendant responds that it "made every effort to meet and confer with Plaintiff's counsel . . . before the filing deadline." (*See* Reply at 6–7.)

/ / /

---

[1] In relevant part, Rule 16(f) provides:

> (f)    Sanctions.
>
> (1)    In General. On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party or its attorney:
>
> . . .
>
> (C)    fails to obey a scheduling or other pretrial order.
>
> (2)    Imposing Fees and Costs. Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses--including attorney's fees--incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust.

The record does not support Defendant's contention.  Although Judge Butcher set an August 25, 2025 deadline to file "[a]ny motion to join other parties, to amend the pleadings, or to file additional pleadings," (*see* ECF No. 14 ¶ 1), the instant Motion is obviously not such a motion and—as Defendant itself acknowledges—"§ 1404(a) imposes no time limit on transfer motions." (*See* Reply at 8.)  It is therefore unclear why defense counsel was unable to wait less than 24 hours to file this motion so that they could meet and confer with Plaintiff's counsel on the morning of August 26, 2025. (*See* ECF No. 23-2 at 7.)

Nonetheless, given the apparent antagonism among the Parties and counsel, (*see, e.g.*, ECF No. 23-2 at 7–15, 22–33); *see also infra* pp. 7–9 & nn. 2–3, the Court does not believe that Plaintiff would have been spared the effort and expense of opposing this Motion even if defense counsel had made a good faith effort to meet and confer before filing.  Because there were no "expenses . . . incurred because of any noncompliance," *see* Fed. R. Civ. P. 16(f)(2), the Court necessarily **DENIES** Plaintiff's request for sanctions.  Nonetheless, the Court admonishes defense counsel:

> Failure of counsel, or of any party, to comply with these rules, with the Federal Rules of Civil or Criminal Procedure, or with any order of the Court may be grounds for imposition by the Court of any and all sanctions authorized by statute or rule or within the inherent power of the Court, including, without limitation, dismissal of any actions, entry of default, finding of contempt, imposition of monetary sanctions or attorneys' fees and costs, and other lesser sanctions.

S.D. Cal. CivLR 83.1(a).

## II.    Weighing of Factors

The Court now "consider[s] private and public interest factors affecting the convenience of the forum." *Decker Coal*, 805 F.2d at 843.

> Private interest factors include (1) the location where the relevant agreements were negotiated or the alleged events took place; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) each party's contacts with the forum, and the relation of those contacts to the plaintiff's cause of action; (5) the differences in litigation costs in each forum;

(6) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (7) the ease of access to sources of proof. Public interest factors include (8) the public interest in the local adjudication of local controversies and (9) the relative congestion of the two courts.

*Hutto v. Orion Sys. Integrators LLC*, No. C25-0984-KKE, 2025 WL 2782488, at *2 (W.D. Wash. Sept. 30, 2025) (first citing *Jones*, 211 F.3d at 498–99; then citing *Decker Coal*, 805 F.2d at 843).

### *A.  Private Interest Factors*

#### *1.  Where the Alleged Events Took Place*

Defendant contends that "the events giving rise to Plaintiff's claims occurred during a multi-day internal Hackathon retreat held in Austin, Texas in December 2024." (*See* Mem. at 20-1 (citing Compl. ¶¶ 54–75).) Plaintiff responds that this is "a flat out lie" and that "[n]early all of the alleged discrimination and retaliation took place while Ms. Lenner was working for Defendant in San Diego County." (*See* Opp'n at 12.)

Even giving defense counsel the benefit of the doubt, the Court must agree with Plaintiff that Defendant's characterization of the "events giving rise to Plaintiff's claims" is—at best—misleading. As Defendant itself conceded when removing this case, (*see* ECF No. 1-1 (describing the "Cause of Action" as, among other things, "Gender/Sex Discrimination" and "Wrongful Termination")), Plaintiff's claims are in essence gender discrimination and wrongful termination. Although Defendant focuses exclusively on Plaintiff's allegations concerning "an onsite in Austin, Texas from December 17 through December 20," 2024, (*see* Mem. at 6–7 (citing Compl. ¶¶ 54–75; ECF No. 20-3 at 1–4 ("Carter Decl.") ¶¶ 11–16); *see also id.* at 5, 13, 17–18), the discrimination that Plaintiff alleges began and was reported *before* the December 2024 onsite in Austin, Texas, (*see* Compl. ¶¶ 17–53), while she was working from San Diego.[2] (*See* Carter Decl. ¶ 8

---

[2]  Defendant also trivializes the amount of time that Plaintiff worked remotely from San Diego, characterizing it as a matter of "months." (*See, e.g.*, Mem. at 5 ("Plaintiff's only connection to this District is that she resided in California while working remotely for Outdoorsy during the final months of her employment . . . ."), 12 ("The only private interest factor Plaintiff can cite is her current resident in this

(indicating that Plaintiff began working remotely from San Diego in January 2024).) Plaintiff only mentioned the onsite in Austin because she believed that event was "indicative of further gender/sex discrimination." (*See* Compl. ¶ 54.) While it is apparent that Defendant has taken the position that Plaintiff was terminated for leaving the onsite a day early, (*see* Mem. at 6–7, 13; Carter Decl. ¶¶ 14–16), those simply are not "the events giving rise to Plaintiff's claims" "[a]s alleged by the Plaintiff herself." (*See* Mem. at 6.) Consequently, it is incredibly disingenuous of defense counsel to claim that "*none* of the operative events leading to th[is] action occurred in this District," (*see id.* at 17–18 (emphasis added)), given Plaintiff's allegations that she was subjected to gender-based discrimination, disparate treatment, and wrongful termination while working for Defendant in San Diego. (*See generally* Compl. ¶¶ 1, 9–83.)

Giving Plaintiff's allegations the weight to which they are entitled, *see, e.g.*, *Nutrition Distrib., LLC v. Driven Sports*, No. LACV1306195JAKPLAX, 2014 WL 12603500, at *3 (C.D. Cal. Apr. 17, 2014) ("[P]laintiffs may rely on the allegations in their complaint to establish venue to the extent those allegations are not controverted by defendant's evidence."), this factor does not favor either party.[3] *See, e.g.*, *Hutto*, 2025 WL 2782488, at *3 (concluding that harassment, discrimination, and retaliation "case [wa]s no more centered in New Jersey than it [wa]s in Washington" where the plaintiff worked remotely from Seattle, the defendant corporation made hiring and firing decisions in New

///

---

District, which arose only in the final months of her employment.").) Plaintiff actually worked remotely in San Diego closer to a full year. (*See, e.g.*, Carter Decl. ¶ 8; ECF No. 23-1 ("Lenner Decl") ¶¶ 5, 8, 19.)

[3] The Court also gives no weight to Defendant's argument that Plaintiff signed a Proprietary Information and Inventions Agreement ("PIIA") containing a Texas forum-selection and choice-of-law clause given Defendant's concession that "Plaintiff's current statutory employment claims [do] not directly 'arise under' the PIIA." (*See* Mem. at 11); *see also, e.g.*, *Hutton*, 2025 WL 2782488, at *3 (giving "little weight" to "where the parties negotiated or executed [the plaintiff's] employment documents" because the plaintiff's "claims are for retaliation, disparate treatment, hostile work environment, and violation of the Silenced No More Act—not breach of contract").

Jersey, the plaintiff's supervisor (who allegedly harassed her) lived in Florida, and other employees involved in the dispute worked in other states and countries).

### 2. Familiarity with Governing Law

Plaintiff contends that "California based courts are better equipped to handle the intricacies of California employment law, particularly around issues of sex and gender," (*see* Opp'n at 23), while Defendant contends that "[c]ourts in [one state] are fully capable of applying [another state's] substantive law." (*See* Reply at 12 (alterations in original) (quoting *Metz v. U.S. Life Ins. Co.*, 674 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009)).)

Although Defendant is correct that the Western District of Texas would surely be capable of applying California law, it is also true that "[a] California district court is more familiar with California law than district courts in other states." *See In re Ferrero Litig.*, 768 F. Supp. 2d 1074, 1081 (S.D. Cal. 2011) (citing *Getz v. Boeing Co.,* 547 F. Supp. 2d 1080, 1085 (N.D. Cal. 2008)). The Court therefore concludes that this factor weighs slightly against transfer.

### 3. Plaintiff's Choice of Forum

"Ordinarily, a strong presumption exists in favor of a plaintiff's choice of forum." *Byler v. Deluxe Corp.*, 222 F. Supp. 3d 885, 904 (S.D. Cal. 2016) (citing *Piper Aircraft*, 454 U.S. at 255). "This presumption is overcome only when private and public interest factors 'clearly' point toward an alternative forum." *Id.* (citing *Piper Aircraft*, 454 U.S. at 255). "However, in cases where a plaintiff's choice of forum lacks a significant connection to the transactions giving rise to the plaintiff's claims, a plaintiff's choice of forum is entitled to less weight." *Id.* at 904–05 (citing *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968)).

Defendant contends that Plaintiff is not entitled to the presumption in favor of her choice of forum because "[t]here is no plausible reason for Plaintiff to have brought this action in the Southern District of California." (*See* Mem. at 17.) For the reasons discussed above, *see supra* pp. 7–9 & nn. 2–3, the Court disagrees. Accordingly, this factor weighs heavily in Plaintiff's favor, *see, e.g., Hutto*, 2025 WL 2782488, at *4 ("[The plaintiff]'s

residence and place of work is undoubtedly significant." (citing *Maillet v. Endophys Holdings, LLC*, No. 2:24-CV-6901-SVW, 2024 WL 5424135, at *4 (C.D. Cal. Nov. 4, 2024))), and "[D]efendant must 'make a strong showing of inconvenience'" to justify transfer. *See id.* (quoting *Decker Coal*, 805 F.2d at 843).

        4.      *Parties' Contacts with the Forum*

Each Party has significant contacts with both this forum and the Western District of Texas. Defendant is headquartered in Austin, (*see* Carter Decl. ¶ 3); the majority of Defendant's employees are based in Austin, (*see id.* ¶ 4); and Plaintiff continued to travel to Austin while working remotely for Defendant. (*See, e.g.*, Compl. ¶ 54; Lenner Decl. ¶¶ 8, 15.) Meanwhile, Plaintiff has resided in San Diego for nine of the last twelve years, (*see* Lenner Decl. ¶ 4), and worked for Defendant for approximately a year from San Diego, (*see id.* ¶ 8), an arrangement which Defendant itself approved. (*See id.* ¶ 6.) "Accordingly, this factor is neutral." *See Hutto*, 2025 WL 2782488, at *5.

        5.      *Relative Litigation Costs*

"In considering the costs of litigating in each forum, the Court must be careful to avoid a transfer that would merely shift rather than eliminate the inconvenience of costs." *Hutto*, 2025 WL 2782488, at *5 (internal quotation marks omitted) (citing *In re Ferrero Litig.*, 768 F. Supp. 2d at 1081). "Here, transfer to the [Western] District of [Texas] could ease [Defendant]'s litigation costs by reducing expenses for its employees who might have to travel to appear before this Court." *See id.* "By the same token, however, transfer would increase travel costs for [Plaintiff], who would undoubtedly be called to testify were this case to go to trial." *See id.* "'When presented with such a split, courts have' typically 'sided with the convenience of individual parties over the convenience of corporate parties' who 'are better-equipped . . . to absorb increased litigation costs.'" *See id.* (alteration in original) (quoting *Maillet v. Endophys Holdings, LLC*, No. 2:24-CV-6901-SVW, 2024 WL 5424135, at *4 (C.D. Cal. Nov. 4, 2024)). "Because transfer would merely shift the expense of litigation from [Defendant], a company . . . , to [Plaintiff], an individual, the relative costs of litigation as between the parties weighs against transfer." *See id.*

"Courts also consider '[t]he relative convenience to the witnesses' when assessing litigation costs." *Id.* (alteration in original) (quoting *Hoyt v. Liberty Mut. Grp. Inc.*, No. 2:20-CV-00379-SMJ, 2021 WL 966018, at *4 (E.D. Wash. Mar. 15, 2021)). "In doing so, courts 'consider not only the number of witnesses located in the respective venues, but also the nature and quality of their testimony.'" *Id.* (first citing *Sloan v. Pfizer, Inc.*, No. 08-cv-1849-SBA, 2008 WL 4167083, at *5 (N.D. Cal. Sept. 8, 2008); then citing *Gates Learjet Corp. v. Jenson*, 743 F.2d 1325, 1335–36 (9th Cir. 1984)). Plaintiff lives in this District, (*see* Lenner Decl. ¶ 4), and Defendant identifies a number of prospective witnesses, five of eleven of whom live in Austin, but a majority of whom live elsewhere, including Sunnyvale, California; Salt Lake, Utah; Bozeman, Montana; and Florida. (*See* Mem. at 14.) Nearly two-thirds of Defendant's witnesses are also current employees whom Defendant may compel to testify regardless of venue, meaning "their convenience is afforded relatively less weight." *See Hutto*, 2025 WL 2782488, at *5 (citing *Thanos v. Unum Life Ins. Co.*, No. 15-CV-03616-YGR, 2015 WL 5770786, at *3 (N.D. Cal. Oct. 2, 2015)). Of Defendant's former employees, one of the most critical will be Plaintiff's former manager, Han-Shen Yuan, who resides in Sunnyvale, California.[4] (*See* Mem. at 14; *see also* Compl. ¶¶ 24–41.) On the whole, Defendant discusses only one former employee—Mr. Volk—who would be more inconvenienced by litigating in this forum rather than the Western District of Texas. (*See* Mem. at 14.)

Accordingly, "[b]ecause transfer would merely shift the expense of litigation from [Defendant] to [Plaintiff], who is relatively less capable of absorbing increased costs, this factor weighs against transfer." *See Hutto*, 2025 WL 2782488, at *6.

---

[4] Defendant does not even identify how two of the four former employees, Chandler Livingston and Rich Ancy, both of whom still reside in Austin, are connected to this case or what the importance of their testimony would be. (*See* Mem. at 14.) Plaintiff's Complaint notes that Mr. Livingston is one of the colleagues who noticed how Ms. Young treated Plaintiff, (*see* Compl. ¶¶ 20–22), although it appears that current employees of Defendant, Messrs. Volk and Dyer, can provide similar testimony. (*See id.* ¶ 21.) Similarly, Mr. Ancy was "aware that there were zero women in their department," (*see id.* ¶ 37), but Messrs. Yuan and Dyer can also testify to this fact. (*See id.*)

### 6. Availability of Compulsory Process

Defendant contends that "the reach of this Court's subpoena power to secure witness attendance is limited," (*see* Mem. at 16 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947), *superseded by statute on other grounds as stated in Am. Dredging Co. v. Miller*, 510 U.S. 443 (1994))), but, as Plaintiff notes, "compulsory process for current employees is of de minimis importance." (*See* Opp'n at 16.) Because Defendant has discussed only one former employee who could not be compelled to testify in this District but who would be subject to compulsory process by the Western District of Texas, *see supra* p. 11, this factor weighs slightly in favor of transfer.

### 7. Access to Sources of Proof

Finally, Defendant contends that relevant records and documents are located in Austin, where it is headquartered. (*See* Mem. at 15; *see also* Carter Decl. ¶ 18.) Plaintiff responds that "all of those documents are electronic (or can easily be scanned), confirmed by the fact that Ms. Lenner already received her digital personnel records prior to the start of this case." (*See* Opp'n at 17.) It is true that "[t]he weight of this factor has decreased as technological advances in document storage and retrieval have greatly reduced the burden of transporting documents between districts." *See Hutto*, 2025 WL 2782488, at *6 (quoting *TransPerfect Glob., Inc. v. Motionpoint Corp.*, No. 10-02590 CW, 2010 WL 3619565, at *4 (N.D. Cal. Sept. 13, 2010)). Accordingly, this factor weighs only slightly in favor of transfer.

## B. Public Interest Factors

### 1. Local Adjudication of Local Controversies

Defendant notes that Texas has an "interest in adjudicating a dispute involving a Texas-based employer," (*see* Mem. at 17), while Plaintiff counters that California has an interest in enforcing "public policies and protections for California workers." (*See* Opp'n at 18.) Consequently, "[o]verall, neither state has a significantly greater interest in having this case resolved locally." *See Hutto*, 2025 WL 2782488, at *6.

/ / /

### 2. Relative Congestion

Plaintiff introduces evidence that "[t]his District is less congested and has more capacity to adjudicate this lawsuit" than the Western District of Texas. (*See* Opp'n at 19; *see also* ECF No. 23-2 at 1–5 ("Chizen Decl.") ¶ 25; ECF No. 23-2 at 35–36.) Defendant argues that "[d]ocket considerations alone cannot be the primary reason for retaining a case," (*see* Reply at 12 (quoting *Hawkins*, 924 F. Supp. 2d at 1217)), but the Court does not consider this a "primary reason" weighing for or against transfer. Instead, it is one of many factors weighing slightly against transfer.

### C.  Weighing of the Factors

Plaintiff's choice of this District—where she resided and experienced the alleged gender discrimination, wrongful termination, and other alleged misconduct on the part of Defendant—is entitled to significant deference. Accordingly, Defendant must show that the private and public interest factors weigh heavily in favor of transfer to the Western District of Texas to overcome the presumption in favor of Plaintiff's chosen forum. Based on the Court's analysis, only the availability of compulsory process and access to sources of proof weigh in favor of transfer to Defendant's preferred venue. Because Defendant "has not made the 'strong showing of inconvenience' needed to override [Plaintiff's] choice" of forum, *see Hutto*, 2025 WL 2782488, at *7 (quoting *Decker Coal*, 805 F.2d at 843), the Court necessarily **DENIES** Defendant's Motion.

### CONCLUSION

In light of the foregoing, the Court **DENIES** both Defendant's Motion to Transfer Venue (ECF No. 20) and Plaintiff's request for sanctions.

**IT IS SO ORDERED.**

Dated: October 20, 2025

Honorable Todd W. Robinson
United States District Judge